UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| W.W.G., a minor, by and through CAROLYN DEMORST, Guardian ad Litem, | ) No. CV 10-2106-PLA ) ) |
| Plaintiff, | ) **MEMORANDUM OPINION AND ORDER** ) |
| v. | ) ) |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) ) ) |
| Defendant. | ) ) |

**I.**

**PROCEEDINGS**

Carolyn Demorst ("plaintiff"), on behalf of W.W.G.,[1] filed this action on March 26, 2010, seeking review of the Commissioner's denial of W.W.G.'s application for Supplementary Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on May 12, 2010, and May 25, 2010. Pursuant to the Court's Order, the parties filed a Joint

---

[1] At the time this action was filed, Carolyn Demorst was appointed Guardian ad Litem for her minor son, who will be referred to herein as "W.W.G."

Stipulation on December 22, 2010, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

## II.

## BACKGROUND

On June 25, 2007, plaintiff filed an application seeking Supplemental Security Income payments for her minor son, W.W.G., alleging that he has been disabled since October 1, 2006, due to attention deficit hyperactivity disorder and asthma. [Administrative Record ("AR") at 101, 110-16, 127-38.] After the application was denied initially, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 102-07.] A hearing was held on September 15, 2008, at which time plaintiff and W.W.G. appeared with counsel and both testified. A medical expert also testified. [AR at 78-100.] A supplemental hearing was held on December 15, 2008, at which time plaintiff appeared with counsel and a different medical expert testified. [AR at 52-77.] On March 4, 2009, the ALJ determined that W.W.G. was not disabled. [AR at 9-17.] When the Appeals Council denied plaintiff's request for review of the hearing decision on January 29, 2010, the ALJ's decision became the final decision of the Commissioner. [AR at 1-6.] This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well

as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## EVALUATING DISABILITY IN A CHILD

The evaluation of disability for children differs from that for adults. For an individual under eighteen years of age to be disabled for the purpose of receiving benefits, he must suffer from a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). An impairment meets this requirement if it meets or equals in severity any impairment that is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listing"). 20 C.F.R. § 416.924(d).

**A.   THE THREE-STEP SEQUENTIAL EVALUATION PROCESS**

The Regulations promulgated by the Social Security Administration establish a three-step sequential evaluation process for child disability cases. See 20 C.F.R. § 416.924. At step one, the relevant inquiry is whether the child is engaged in substantial gainful activity. If so, there is no disability, and the claim is denied. 20 C.F.R. § 416.924(b). If the child is not engaged in substantial gainful activity, the fact finder then determines whether the child has a medically determinable impairment or combination of impairments that is severe. If the impairment is a "slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations," the Commissioner will find that the impairment is not severe and will deny the child's claim. 20 C.F.R. § 416.924(c). If the child has a severe impairment, the third and final step assesses whether the impairment meets or medically or functionally equals in severity an impairment in the Listing. If the impairment meets or equals the Listing, the child will be found disabled, assuming that the 12-month duration requirement is also met. 20 C.F.R. § 416.924(d).

A child's impairment "is medically equivalent to a listed impairment ... if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a). To establish medical equivalence, "a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment." Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999) (quoting 20 C.F.R. § 404.1526).

To determine whether a child's severe impairment functionally equals a listed impairment, the Commissioner assesses all of the functional limitations caused by the child's impairment in six "domains": (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(a), (b). To functionally equal a listed impairment, a child's impairment must result in "marked" limitations in two domains or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). A "marked" limitation is one that "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2). It is "'more than moderate'" but "'less than extreme.'" Id. A child's "day-to-day functioning may be seriously limited when [his] impairment(s) limits only one activity or when the interactive and cumulative effects of [his] impairment(s) limit several activities." Id. An "extreme" limitation "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3). It is the rating given to "the worst limitations." Id.

**B.   THE ALJ'S APPLICATION OF THE THREE-STEP PROCESS**

In this case, at step one, the ALJ found that "[s]ubstantial gainful activity is not an issue in this case." [AR at 13, 16.] At step two, the ALJ concluded that W.W.G. has the severe impairment of attention deficit hyperactivity disorder, combined type ("ADHD"). [Id.] At step three, the ALJ determined that W.W.G.'s impairment does not meet, medically equal, or functionally equal any impairment in the Listing. [AR at 14, 16-17.] Specifically, in assessing W.W.G.'s functional limitations in each of the six domains described above, the ALJ concluded that W.W.G. "does not have two 'marked' limitations or one 'extreme' limitation in any of the six domains that would

constitute 'functional equivalence.'" [AR at 16-17.] Accordingly, the ALJ concluded that W.W.G. is not disabled. [Id.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred in finding that W.W.G.'s impairments do not functionally equal the Listing. [Joint Stipulation ("JS") at 2.] As set forth below, the Court agrees with plaintiff and remands the matter for further proceedings.

**FUNCTIONAL EQUIVALENCE**

Plaintiff contends that the ALJ's step-three finding that W.W.G. does not functionally equal the Listing is not supported by substantial evidence.[2] [JS at 3-5.] Specifically, plaintiff argues that the ALJ erred in relying on the testimony of nonexamining psychological expert Dr. Laura Levine, who opined at the December 15, 2008, hearing that W.W.G. has a marked limitation only in the domain of attending and completing tasks, but less than marked limitations in all of the other domains. [JS at 4, citing AR at 15, 66-73.] Plaintiff contends that in addition to W.W.G.'s marked limitation in the domain of attending and completing tasks, W.W.G.'s school records show that he also has a marked limitation in his ability to interact and relate to others, and that the presence of this additional marked limitation "warrants a finding of disability based on the 'functionally equivalence' theory under 20 C.F.R. § 416.926a." [JS at 4.]

Dr. Levine diagnosed W.W.G. as having "ADHD combined type, which means a combination of inattentive typing and interactive impulsive types." [AR at 64.] In testifying about the six functional domains described above, Dr. Levine opined that W.W.G. has a marked limitation with respect to attending and completing tasks, but less than marked limitations in the remaining five domains. [AR at 66-67.] In discussing the evidence pertinent to the domain of

---

[2] Plaintiff concedes that W.W.G. does not meet or medically equal a listed impairment. [See JS at 3.]

5

1 ability to interact and relate to others, Dr. Levine addressed some of the record evidence pertinent
2 to W.W.G.'s behavior at school. Specifically, Dr. Levine testified that the record shows that
3 W.W.G. has a behavioral issue as a result of his ADHD, "which interferes with learning." [AR at
4 64.] She also noted that although W.W.G.'s school records from 2007 demonstrated that he had
5 "trouble keeping his hands to himself" and that he had "problems with impulse control, following
6 directions, working independently, attention deficit and more or less unspecified social/behavioral
7 issues," the more recent records through April 2008 gave her "no idea what his current social
8 behavioral function is."[3] [AR at 64-65, 68.] Dr. Levine discounted a Teacher Questionnaire form
9 completed by W.W.G.'s third grade teacher, Mary K. Shery, on September 21, 2007, in which Ms.
10 Shery stated that it was necessary to implement behavior modification strategies for W.W.G.
11 (including behavior contracts, time-outs, and removal from the classroom), stated that W.W.G.
12 could not work without constant supervision, and opined that he had on a daily basis a number
13 of "obvious" and "serious" behavioral and social-interaction problems compared to the functioning
14 of same-aged children without impairments.[4] [AR at 69-70, referring to AR at 228, 233, 237.]
15 Specifically, Dr. Levine stated that the information reflected in the Teacher Questionnaire was
16 more than a year old and "not substantiated anywhere else in the record." [AR at 69.] Dr. Levine
17 also stated that "[t]eachers and psychologists don't necessarily assess things in the same way
18 based on the same kinds of information," and thus she interpreted the information in the Teacher
19 Questionnaire as "a teacher's observation, ... [not] as a mental health professional's observation."
20 [Id.] Dr. Levine further opined that school records indicating that W.W.G. had difficulty following

---

[3] W.W.G.'s educational records dated November 2008 and October 2009 were made part of the administrative record after the ALJ's decision, and thus were not included in the evidence considered by Dr. Levine at the December 2008 hearing. [See AR at 5, 59-64, 448-74.]

[4] The Teacher Questionnaire form lists 13 activities pertaining to the "interacting and relating with others" domain discussed herein, and includes a five-point rating scale for each activity, including 1) no problem, 2) a slight problem, 3) an obvious problem, 4) a serious problem, and 5) a very serious problem. [See AR at 233.] Ms. Shery opined that W.W.G. had obvious problems with playing cooperatively with other children, making and keeping friends, seeking attention appropriately, relating experiences and telling stories, and introducing and maintaining relevant and appropriate topics of conversation; and had serious problems with expressing anger appropriately and following rules (classroom, games, sports). [Id.]

6

rules on the playground, got into trouble for rough housing, needed instructions repeated, and was disruptive to his peers reflected that W.W.G. had only "normal ADHD behavior" and did not reflect marked behavioral limitations. [AR at 70-71, 73.]

Dr. Levine clarified that she considered marked problems in the domain of interacting and relating to others to include "things like multiple suspensions [and] physical fights." [AR at 68.] She opined that the overall record did not reflect that W.W.G. had such a major discipline problem. Instead, Dr. Levine characterized W.W.G.'s behavior as "a typical ADHD behavioral profile," "typical ADHD behavior ... [that] is not bizarre," and "an ADHD discipline problem, which is non-severe," but just "what ADHD kids who are unmedicated[5] do." [AR at 65, 70-71.] Dr. Levine further commented that "if you have ever examined or been exposed to [a] severely emotionally disturbed child, you will recognize that [W.W.G.] is not a severely emotionally disturbed child," but is rather a "normal child with ADHD." [AR at 72.]

The record also contains a Psychological Evaluation conducted by consultative examining psychologist Dr. Scott Kopoian on October 29, 2007. [See AR at 286-91.] Among the results from a battery of tests completed during the Evaluation, behavioral test results showed that W.W.G. had low to adequate classifications in a variety of behavioral domains and sub-domains, including low classifications in communication and expressive language; moderately low classifications in written language and community skills; and adequate classifications in daily living skills, socialization, receptive language, personal skills, domestic skills, interpersonal relationships, play and leisure time, and coping skills. [AR at 290.] Dr. Kopoian reviewed some of W.W.G.'s school records from 2007 that noted that W.W.G. had problems in the areas of aggression, conduct, depression, learning, withdrawal, task completion without constant supervision, and interacting and relating with others. [AR at 290-91, citing AR at 163-69 (school psychological services statement, dated May 14, 2007), 174-94 (Individual Education Plan ("IEP"), dated May 16, 2007), 233 (Ms. Shery's Teacher Questionnaire).] Dr. Kopoian diagnosed W.W.G. as having ADHD,

---

[5] Plaintiff admitted at the hearing that W.W.G. had not taken medication for his ADHD. [AR at 65.]

7

combined type (by history) and noted that W.W.G. showed no "gross behavioral and emotional abnormalities," but rather displayed a "normal range of emotional response" during the Evaluation. [AR at 286, 291.] Dr. Kopoian opined that W.W.G. "is able to function in a regular classroom with modifications of higher than usual levels of parental involvement, access to a resource room to receive individual and small group instruction, priority seating, a behavioral contract, regularly revised and updated and higher levels of feedback." [AR at 291.] Dr. Kopoian further opined that W.W.G.'s "behavior during the evaluation reflects that he can interact appropriately with authority figures" and would likely be able to "interact with peers without exhibiting behavioral extremes so long as he is given tasks consistent with his capacities." [Id.]

In the decision, the ALJ credited the testimony of Dr. Levine, finding her testimony (including that W.W.G.'s behavior is "typical" and does not demonstrate marked limitations aside from attending and completing tasks) to be "adequately substantiated and consistent with the evidence." [AR at 16.] The ALJ further stated that she afforded "[c]onsiderable weight" to the opinions of Dr. Kopoian and W.W.G.'s school psychologist. [Id.] For the reasons expressed below, the Court finds that the ALJ erred in concluding that W.W.G. does not functionally equal the Listing.

In considering whether a child claimant has "marked" or "extreme" limitations with respect to the six domains concerning functional equivalence under 20 C.F.R. § 416.926a, the Commissioner is required to consider all relevant information in the record, including, among other things, information concerning the child's level of functioning from his parents, teachers, and other people who know him. 20 C.F.R. §§ 416.924a, 416.926a(e)(1). If the child goes to school, the Commissioner is required to obtain and consider information from the child's "teachers and other school personnel about how [the child is] functioning there on a day-to-day basis compared to other children [his] age who do not have impairments." 20 C.F.R. § 416.924a(2)(iii). Specifically, the Commissioner must "ask for any reports that the school may have that show the results of formal testing or that describe any special education instruction or services, including home-based instruction, or any accommodations provided in a regular classroom" that the child has received. Id.

Although an ALJ may give more weight to an opinion of an "acceptable medical source" (e.g., licensed physicians and licenced or certified psychologists) over "other sources," such as educational personnel (see 20 C.F.R. §§ 404.1513(d)(2), 404.1527, 416.913(d)(2), 416.927; Gomez v. Chater, 74 F.3d 967, 970-71 (9th Cir. 1996)), the ALJ may not completely disregard an opinion from an "other source" merely because it is not an "acceptable medical source." See Social Security Ruling[6] 06-03p ("[T]here is a requirement to consider all relevant evidence in an individual's case record"); see also Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987) (noting that regulations require an ALJ to "consider observations" even "by non-medical sources"). Rather, "the case record should reflect the consideration of opinions from ... 'non-medical sources' [like teachers and other educational personnel] who have seen the claimant in their professional capacity[,] ... [and] the adjudicator generally should explain the weight given to opinions from these 'other sources[.]'" SSR 06-03p. Such an explanation supports the Administration's recognition that non-medical sources, such as educational professionals, are "valuable sources of evidence" concerning the claimant's functioning, as they oftentimes have "close contact with the [claimant] and have personal knowledge and expertise to make judgments about their impairment(s), activities, and level of functioning over a period of time." [Id.] Accordingly, although the Regulations do not expressly state how an ALJ must evaluate evidence from "other sources" like educational professionals, "they do require consideration of such evidence when evaluating an 'acceptable medical source's' opinion." Id.

The functional equivalence domain of "[i]nteracting and relating with others refers to how well the child initiates and sustains emotional connections with others, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others." Hopgood ex rel. L.G. v. Astrue, 578 F.3d 696, 702 (7th Cir. 2009) (citing 20 C.F.R. § 416.926a(i)). The Regulations provide that with regard to this domain, school-age children from

---

[6] Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

6 to 12 years old should be able to develop lasting friendships with children of their own age; begin to understand how to work in groups to solve problems and create projects; have an increasing ability to understand others' points of view and tolerate differences; and talk to people of all ages to tell stories, share ideas, and speak in a manner so that familiar and unfamiliar listeners will readily understand. 20 C.F.R. § 416.926a(i)(2)(iv). The Regulations also provide a non-exhaustive list of "[e]xamples of limited functioning in interacting and relating with others," which includes, among others, a lack of close friends, difficulty playing games or sports with rules, and difficulty communicating with others. 20 C.F.R. § 416.926a(i)(3).

Here, although the ALJ in the decision discussed some aspects of W.W.G.'s educational records [see AR at 13-16], the ALJ did not expressly weigh all of the relevant evidence reflecting the observations and opinions of W.W.G.'s educators and school personnel (including teachers, resource specialists, and school psychologists) regarding his ability to interact and relate with others. Specifically, the ALJ in the decision made no mention of Ms. Shery's opinion expressed in the Teacher Questionnaire that W.W.G. has serious and obvious problems relevant to the domain of interacting and relating to others. [See AR at 233.] Because a child's "day-to-day functioning may be seriously limited" -- i.e., may constitute a marked limitation under the Regulations -- "when [his] impairment(s) limits only one activity or when the interactive and cumulative effects of [his] impairment(s) limit several activities" (20 C.F.R. § 416.926a(e)(2)(i)), proper consideration of Ms. Shery's opinion that W.W.G. has serious problems expressing anger and following rules, and obvious problems playing cooperatively with other children, making and keeping friends, seeking attention appropriately, relating experiences and telling stories, and introducing and maintaining relevant and appropriate topics of conversation, may have impacted the ALJ's determination concerning W.W.G.'s limitations in the domain of interacting and relating to others. As such, it was error for the ALJ to fail to explain in the decision the weight she afforded Ms. Shery's opinion. See SSR 06-03p.

Moreover, although the ALJ asserted in the decision that she gave the opinions of W.W.G.'s school psychologist "[c]onsiderable weight" [AR at 16], that assertion does not constitute a sufficient consideration of the opinions of W.W.G.'s educators and school personnel, as numerous

notations in W.W.G.'s educational records from his teachers, resource specialists, and psychologists appear to support Ms. Shery's opinion that W.W.G. has serious and obvious problems in the domain of interacting and relating to others. [See, e.g., AR at 163-69 (May 14, 2007, Psycho-Educational Re-Evaluation Report by school psychologist noting W.W.G.'s difficulty keeping his hands to himself, following rules and directions in the classroom and while playing sports, controlling his temper, and making friends), 178, 181 (May 16, 2007, IEP report noting that W.W.G. frequently distracts his classmates and has poor classroom behavior that "significantly impact[s] his ability to access the academic curriculum"), 263-67 (May 14, 2007, Language and Speech Assessment Report noting that W.W.G. was struggling with impulse control and compliance with educators' directions), 337-41 (March 25, 2008, Resource Specialist Report noting that W.W.G. "doesn't think rules apply to him," gets in trouble at school for rough housing, and is disruptive), 350-56 (2008 Multidisciplinary Team Evaluation Report completed by W.W.G.'s school psychologist noting that W.W.G. has difficulty with peer relations, attention, and behavior management, and that he does not follow rules on the playground and often gets in trouble for rough play), 364 (April 10, 2008, IEP Report noting W.W.G. has difficulty following rules and demonstrates behavior consistent with ADHD).] Remand is warranted for the ALJ to properly consider W.W.G.'s educational records concerning his daily problems interacting and relating to others.[7] See Hopgood, 578 F.3d at 700, 703 (finding deficient ALJ's conclusion that a child claimant with ADHD did not functionally equal the Listing, where "the ALJ failed to explain why he did not credit portions of the record that were favorable to [the child], including the teachers'

---

[7] The Court cannot find at this time, as defendant argues in the Joint Stipulation, that W.W.G.'s failure to take medication to treat his ADHD is a valid basis for denying benefits. [See JS at 11; AR at 65, 359.] Although the Administration may deny disability benefits to a person who fails to follow, "without a good reason," prescribed treatment that can ameliorate his impairments (see 20 C.F.R. §§ 404.1530, 416.930), there was no discussion in the decision whether W.W.G. had "a good reason" not to take medication for his ADHD. Moreover, although the ALJ noted in the decision that plaintiff decided not to treat W.W.G. with medication [AR at 16], the ALJ did not deny benefits on that basis, and the Court will not rely on reasons not provided by the ALJ. See Barbato v. Comm'r of Soc. Sec. Admin., 923 F.Supp. 1273, 1276 n.2 (C.D. Cal. 1996); see also Ceguerra v. Sec'y of Health & Human Services, 933 F.2d 735, 738 (9th Cir. 1991) ("A reviewing court can evaluate an agency's decision only on the grounds articulated by the agency.").

reports that found [he] had serious or obvious problems" in the functional domains, such as a serious problem following rules); Vansickle v. Comm'r of Soc. Sec., 277 F.Supp.2d 727, 730-32 (E.D. Mich. 2003) (finding ALJ's decision that a child with ADHD had less than marked limitations in social functioning was not supported by substantial evidence, where the record demonstrated that the child had problems with authority, did not appear to understand the consequences of his actions, and had been removed from normal school settings and put in progressively more restrictive environments).

Furthermore, to the extent the ALJ based her disability determination on Dr. Levine's testimony that W.W.G.'s behavior is "typical" compared to other children with ADHD and that his behavioral problems are not as bad as those of a "severely emotionally disturbed child" [see AR at 16, 65, 70-73], that too was error. The Regulations require the ALJ to consider W.W.G.'s ability to "appropriately, effectively, and independently ... perform ... activities compared to the performance of other children [his] age **who do not have impairments**." 20 C.F.R. § 416.926a(b) (emphasis added); see also 20 C.F.R. § 416.924a(2)(iii). Thus, on remand the ALJ is instructed to consider how W.W.G.'s impairments impact his ability to function as compared to other children his age who do *not* have ADHD or any other impairment.[8]

## VI.
## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate for the ALJ to properly consider W.W.G.'s educational records to assess whether he meets the functional equivalence requirements of 20 C.F.R. § 416.926a.

---

[8] On remand, the ALJ is directed to consider the full evidentiary record, including W.W.G.'s educational records that were made part of the administrative record after the ALJ's decision. [See AR at 5, 449-74.]

The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: February 2, 2011

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE